1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    KOHEN DIALLO UHURU,                        No.  2:20-cv-1613 DB P

12                    Plaintiff,

13         v.                                     ORDER

14    DR. YASHODARA RAO, et al.,

15                    Defendants.

16

17         Plaintiff is a state prisoner proceeding pro se in this civil rights action pursuant to 42

18   U.S.C. § 1983.  Plaintiff seeks relief pursuant to 42 U.S.C. § 1983 and has requested leave to

19   proceed in forma pauperis pursuant to 28 U.S.C. § 1915.  This proceeding was referred to this

20   court by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1).

21         Plaintiff has submitted a declaration that makes the showing required by 28 U.S.C.

22   § 1915(a).  Accordingly, the request to proceed in forma pauperis will be granted.

23         Plaintiff is required to pay the statutory filing fee of $350.00 for this action.  28 U.S.C.

24   §§ 1914(a), 1915(b)(1).  By this order, plaintiff will be assessed an initial partial filing fee in

25   accordance with the provisions of 28 U.S.C. § 1915(b)(1).  By separate order, the court will direct

26   the appropriate agency to collect the initial partial filing fee from plaintiff's trust account and

27   forward it to the Clerk of the Court.  Thereafter, plaintiff will be obligated for monthly payments

28   of twenty percent of the preceding month's income credited to plaintiff's prison trust account.

1

1  These payments will be forwarded by the appropriate agency to the Clerk of the Court each time

2  the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full.  28 U.S.C.

3  § 1915(b)(2).

4  **I.      Screening Requirement**

5          The in forma pauperis statute provides, "Notwithstanding any filing fee, or any portion

6  thereof, that may have been paid, the court shall dismiss the case at any time if the court

7  determines that . . . the action or appeal . . . fails to state a claim upon which relief may be

8  granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

9  **II.     Pleading Standard**

10          Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or

11  immunities secured by the Constitution and laws of the United States." Wilder v. Virginia Hosp.

12  Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of

13  substantive rights, but merely provides a method for vindicating federal rights conferred

14  elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

15          To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a

16  right secured by the Constitution or laws of the United States was violated and (2) that the alleged

17  violation was committed by a person acting under the color of state law.  See West v. Atkins, 487

18  U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir. 1987).

19          A complaint must contain "a short and plain statement of the claim showing that the

20  pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not

21  required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

22  conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell

23  Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual

24  matter, accepted as true, to state a claim to relief that is plausible on its face." Id. Facial

25  plausibility demands more than the mere possibility that a defendant committed misconduct and,

26  while factual allegations are accepted as true, legal conclusions are not. Id. at 677-78.

27  ////

28  ////

2

1     **III.**     **Plaintiff's Allegations**

2         At all times relevant to this action, plaintiff was a state inmate housed at California Health

3 Care Facility ("CHCF") in Stockton, California. Plaintiff names Dr. Yashodara Rao, CHCF Chief

4 of Mental Health; Correctional Officer ("CO") J. Duran; Brian Van Brakle, social worker; and

5 Robert Burton, CHCF Warden. He asserts an array of claims and seeks damages, declaratory

6 relief, and injunctive relief.

7         As best as the Court can determine, plaintiff alleges as follows:

8         Since 2005, plaintiff has been approved for single-cell housing by psychiatrists and

9 psychologists at various institutions. On March 2, 2020, plaintiff was placed in a single cell for

10 "religious/medical and mental health reasons." On May 27, 2020, plaintiff submitted a request to

11 CHCF institutional staff for a permanent single-cell housing assignment. Plaintiff claims that he

12 has since been denied single-cell housing "due to retaliation and discrimination against the

13 practice of [his] Nubian Hebrew Israelite religion with solitary in-cell worship of continuous

14 ablutions, purifications, sanctification pursuant to my Nazarite vows…" Plaintiff suggests that

15 other inmates who are named in his complaint have been approved for single "one-cell" bunks,

16 but he does not specify whether these other single-cell assignments are religious-based.

17         Plaintiff contends that CO Duran acted with animus towards him following plaintiff's

18 request for a permanent single-cell housing assignment. As proof, he cites to two vague incidents.

19 In the first incident on May 28, 2020, CO Duran allegedly "implemented prejudicial punishment"

20 on plaintiff (he provides no further details), but then afterwards apologized by saying "it was his

21 misunderstanding." In the second incident on July 9, 2020, CO Duran, citing a new policy,

22 refused to sign plaintiff's CDCR 22 Form.

23         Plaintiff next suggests that, following his request for permanent single-cell housing, all of

24 the defendants conspired to place him in solitary confinement, where he stayed between May and

25 August 2020. During that period, plaintiff was denied fresh air and sunlight, which has

26 diminished his levels of serotonin and caused him extreme pain in his body and joints due to a

27 lack of walking. He also claims that he was denied the opportunity to fast during the holy month

28 of August, during which he is required to take his 3 daily meals after sundown, and that he was

denied the opportunity to participate in group prayer or fellowship with lower tier Nubian Hebrew Israelites. He claims that Nubian Hebrew Israelites are prevented from fasting, but Muslim inmates, who similarly take their daily 3 meals after sundown during their month of fasting, are able to do so.

On June 6, 2020, plaintiff submitted an "urgent emergency" CDC 7362 Request for Mental Health Services to Dr. Rao regarding his denial of fresh air in isolation. Plaintiff also claimed that he was denied complete access to the courts, access to ADA computers, legal books for research, and in-presence confidential copies of legal documents. Finally, plaintiff claimed that he was unable to fast, which denied him the right to practice his religion. Plaintiff attributes these actions to Warden Burton's mismanagement of CHCF. Plaintiff also accuses social worker Van Brakle of making a "clinical assessment against my mental illness and mental health needs." There are no further details regarding these allegations.

## IV.   Discussion

### A.  Linkage

Under § 1983, the plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. at 676-77 Simmons v. Navajo County, 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009). Liability may not be imposed on supervisory personnel under the theory of *respondeat superior*. Iqbal, 556 U.S. at 676-77. Supervisory personnel may only be held liable if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them," Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) accord Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011), *cert. denied*, 132 S. Ct. 2101 (2012).

Plaintiff's allegations against each of the defendants is far too vague and conclusory to proceed. While plaintiff alleges that these defendants personally violated his constitutional rights and cites to vague incidents, he fails to provide necessary factual details that would enable the Court to determine any claim's viability. Instead, he alleges that CO Duran "implemented prejudicial punishment" and refused to sign a form; that Dr. Rao received a form that plaintiff labeled "urgent emergency"; that Warden Burton mismanages CHCF; and that Van Brakle made

4

a "clinical assessment against [plaintiff's] mental illness and mental health needs." These allegations, standing alone, do not demonstrate personal participation by any of the defendants. Neither does the conclusory allegations that they conspired to place plaintiff in solitary confinement. Therefore, any claims against these defendants must be dismissed, and the complaint in its entirety is subject to dismissal for failure to state a claim.

Plaintiff also asserts several overbroad and inapposite claims under the Fifth, Sixth, and Ninth Amendments, as well as various sections under Article I of the California Constitution, which are either insufficiently alleged or lack any colorable basis and should also be dismissed.

In the remainder of this screening order, the Court will set forth the legal standards for the claims that are directly implicated by plaintiff's allegations. Should plaintiff decide to amend his complaint, he shall pay careful attention to the requirements below.

**B. The Free Exercise Clause of the First Amendment and The Religious Land Use and Institutionalized Persons Act**

Plaintiff claims that he has been unable to practice his religion, including but not limited to the denial of the right to fast and to gather with fellow Nubian Hebrew Israelites. The Free Exercise Clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof...." U.S. Const. amend I. The United States Court of Appeals for the Ninth Circuit summarizes the application of the Free Exercise Clause in a state prison context as follows:

> The First Amendment, applicable to state action by incorporation through the Fourteenth Amendment, *Everson v. Bd. of Educ. of Ewing Twp.*, 330 U.S. 1, 8 (1947), "prohibits government from making a law 'prohibiting the free exercise [of religion].'" *Cruz v. Beto*, 405 U.S. 319, 322 (1972) (per curiam) (alteration in original). The Supreme Court has repeatedly held that prisoners retain the protections of the First Amendment. *See, e.g., O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987); *Pell v. Procunier*, 417 U.S. 817, 822 (1974); *Cruz*, 405 U.S. at 322. A prisoner's right to freely exercise his religion, however, is limited by institutional objectives and by the loss of freedom concomitant with incarceration. *O'Lone*, 482 U.S. at 348.

Hartmann v. California Dep't of Corr. & Rehab., 707 F.3d 1114, 1122 (9th Cir. 2013).

1    "To prevail on their Free Exercise claim, Plaintiffs must allege facts plausibly showing

2  that the government denied them 'a reasonable opportunity of pursuing [their] faith comparable to

3  the opportunity afforded fellow prisoners who adhere to conventional religious precepts.'"  Id.

4  (alteration in original) (quoting Cruz, 405 U.S. at 322).  To implicate the Free Exercise Clause, a

5  prisoner must show that the belief at issue is both "sincerely held" and "rooted in religious

6  belief."  Malik v. Brown, 16 F.3d 330, 333 (9th Cir. 1994); see also Shakur, 514 F.3d 884–85

7  (noting the Supreme Court's disapproval of the "centrality" test and finding that the "sincerity"

8  test in Malik determines whether the Free Exercise Clause applies).  If the inmate makes his

9  initial showing of a sincerely held religious belief, he must establish that prison officials

10 substantially burdened the practice of his religion by preventing him from engaging in conduct

11 that he sincerely believes is consistent with his faith.  Shakur, 514 F.3d at 884–85.

12   Government action substantially burdens the exercise of religion when the action is

13 "oppressive to a significantly great extent."  Int'l Church of Foursquare Gospel v. City of San

14 Leandro, 673 F.3d 1059, 1067 (9th Cir. 2011) (citation and internal quotation marks omitted).

15 "That is, a 'substantial burden' on 'religious exercise' must impose a significantly great

16 restriction or onus upon such exercise."  Id. (quoting San Jose Christian College v. City of

17 Morgan Hill, 360 F.3d 1024, 1034 (9th Cir. 2004)).  "A substantial burden exists where the

18 governmental authority puts substantial pressure on an adherent to modify his behavior and to

19 violate his beliefs."  Id. (citation and internal quotation marks omitted)

20   Additionally, The Religious Land Use and Institutionalized Persons Act of 2000

21 ("RLUIPA") provides:

> No government shall impose a substantial burden on the religious
> exercise of a person residing in or confined to an institution…, even
> if the burden results from a rule of general applicability, unless the
> government demonstrates that imposition of the burden on that
> person:
>> (1) is in furtherance of a compelling government interest; and
>>
>> (2) is the least restrictive means of furthering that compelling
>> government interest.

6

42 U.S.C. § 2000cc-1(a).  Plaintiff must allege facts demonstrating that defendant substantially burdened the exercise of his religious beliefs.  Warsoldier v. Woodford, 418 F.3d 989, 994-95 (9th Cir. 2005).  In any RLUIPA claim, one must first identify the "religious exercise" allegedly impinged upon, and then must ask whether the prison regulation or action at issue "substantially burdens" that religious exercise.  Greene v. Solano County Jail, 513 F.3d 982, 987 (9th Cir. 2008).

"RLUIPA does not define 'substantial burden,' but [the Ninth Circuit] has held that 'a substantial burden on religious exercise must impose a significantly great restriction or onus upon such exercise.'"  Hartmann, 707 F.3d at 1124–25 (citing San Jose Christian Coll. v. City of Morgan Hill, 360 F.3d 1024, 1034 (9th Cir. 2004)).  "Generally, the term 'substantial burden' in RLUIPA is construed in light of federal Supreme Court and appellate jurisprudence involving the Free Exercise Clause of the First Amendment prior to the Court's decision in Emp't Div. Dep't of Human Res. of Oregon v. Smith, 494 U.S. 872, 878-82 (1990)."  Int'l Church of Foursquare Gospel, 673 F.3d at 1067 (citing Guru Nanak, 456 F.3d at 988).  "In the context of a prisoner's constitutional challenge to institutional policies, this court has held that a substantial burden occurs 'where the state ... denies [an important benefit] because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs.'"  Hartmann, 707 F.3d at 1124–25 (citing Warsoldier v. Woodford, 418 F.3d 989, 995 (9th Cir. 2005)).

### C.  The Equal Protection Clause of the Fourteenth Amendment

Plaintiff alleges that Muslim inmates have been treated better than Nubian Hebrew Israelites. Equal protection claims arise when a charge is made that similarly situated individuals are treated differently without a rational relationship to a legitimate state purpose. See San Antonio School District v. Rodriguez, 411 U.S. 1 (1972). Prisoners are protected from invidious discrimination based on race. See Wolff, 418 U.S. at 556. Racial segregation is unconstitutional within prisons save for the necessities of prison security and discipline. See Cruz v. Beto, 405 U.S. 319, 321 (1972) (per curiam). Prisoners are also protected from intentional discrimination on the basis of their religion. See Freeman v. Arpaio, 125 F.3d 732, 737 (9th Cir. 1997). Equal protection claims are not necessarily limited to racial and religious discrimination. See Lee v. City of Los Angeles, 250 F.3d 668, 686-67 (9th Cir. 2001) (applying minimal scrutiny to equal

protection claim by a disabled plaintiff because the disabled do not constitute a suspect class); see also Tatum v. Pliler, 2007 WL 1720165 (E.D. Cal. 2007) (applying minimal scrutiny to equal protection claim based on denial of in-cell meals where no allegation of race-based discrimination was made); Hightower v. Schwarzenegger, 2007 WL 732555 (E.D. Cal. Mar. 19, 2008).

In order to state a § 1983 claim based on a violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must allege that defendants acted with intentional discrimination against plaintiff, or against a class of inmates which included plaintiff, and that such conduct did not relate to a legitimate penological purpose. See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (holding that equal protection claims may be brought by a "class of one"); Reese v. Jefferson Sch. Dist. No. 14J, 208 F.3d 736, 740 (9th Cir. 2000); Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998); Federal Deposit Ins. Corp. v. Henderson, 940 F.2d 465, 471 (9th Cir. 1991); Lowe v. City of Monrovia, 775 F.2d 998, 1010 (9th Cir. 1985).

**D.  Eighth Amendment**

**a.  Medical Indifference**

Plaintiff suggests that Dr. Rao and social worker Van Brakle violated his rights under the Eighth Amendment through their provision of medical care. Where a prisoner's Eighth Amendment claims arise in the context of medical care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). An Eighth Amendment medical claim has two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

A serious medical need exists if the failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). To act with deliberate indifference, a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Farmer v. Brennan, 511 U.S. 825, 837 (1994). Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk

1    by failing to take reasonable measures to abate it." Id. at 847. "It is enough that the official acted

2    or failed to act despite his knowledge of a substantial risk of harm." Id. at 842.

3        In applying this standard, the Ninth Circuit has held that before it can be said that a

4    prisoner's civil rights have been abridged, "the indifference to his medical needs must be

5    substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause

6    of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle,

7    429 U.S. at 105–06). "[A] complaint that a physician has been negligent in diagnosing or treating

8    a medical condition does not state a valid claim of medical mistreatment under the Eighth

9    Amendment. Medical malpractice does not become a constitutional violation merely because the

10   victim is a prisoner." Estelle, 429 U.S. at 106; see also Anderson v. County of Kern, 45 F.3d

11   1310, 1316 (9th Cir. 1995). Even gross negligence is insufficient to establish deliberate

12   indifference to serious medical needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir.

13   1990). Additionally, a prisoner's mere disagreement with diagnosis or treatment does not support

14   a claim of deliberate indifference. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

15       Delays in providing medical care may manifest deliberate indifference. Estelle, 429 U.S.

16   at 104-05. To establish a claim of deliberate indifference arising from a delay in providing care, a

17   plaintiff must show that the delay was harmful. See Berry v. Bunnell, 39 F.3d 1056, 1057 (9th

18   Cir. 1994); McGuckin, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir.

19   1990); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). In this

20   regard, "[a] prisoner need not show his harm was substantial; however, such would provide

21   additional support for the inmate's claim that the defendant was deliberately indifferent to his

22   needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006); see also McGuckin, 974 F.2d at

23   1060. In addition, a physician need not fail to treat an inmate altogether in order to violate that

24   inmate's Eighth Amendment rights. Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir.

25   1989) (per curiam). A failure to competently treat a serious medical condition, even if some

26   treatment is prescribed, may constitute deliberate indifference in a particular case. Id.

27                **b.  Conditions of Confinement**

28

1   Lastly, plaintiff alleges that, for a four-month period, he was housed in solitary

2 confinement where he was denied access to sunlight. He also suggests that he was denied

3 opportunities to exercise outside of his cell.

4   Inmates challenging the conditions of their confinement may do so under the Eighth

5 Amendment's Cruel and Unusual Punishment Clause. See Bell v. Wolfish, 441 U.S. 520, 535

6 (1979). The Eighth Amendment dictates that the conditions complained of may not amount to

7 "cruel and unusual punishment."

8   There can be no dispute that exercise is a human need protected by the Eighth

9 Amendment. Wilson v. Seiter, 501 U.S. 294, 304 (1991) (holding that prison officials may violate

10 a prisoner's eighth amendment right when they deprive him of "a single identifiable human need

11 such as food, warmth, or exercise"). Whether exercise must take place outdoors for *all* inmates

12 regardless of their housing assignment is a question that the Ninth Circuit has not yet reached. See

13 Spain v. Procunier, 600 F.2d 189, 199 (9th Cir. 1979) ("[W]e do not consider it necessary to

14 decide whether deprivation of outdoor exercise is a per se violation of the eighth amendment.").

15   Nonetheless, Spain v. Procunier did affirm the district court's order that the "denial of

16 fresh air and regular outdoor exercise and recreation constitutes cruel and unusual punishment"

17 when it is directed at inmates who are held in essentially solitary confinement in particularly

18 egregious conditions. 600 F.2d at 199. Since then, several cases have relied on Spain v. Procunier

19 for the proposition that the long-term denial of outdoor exercise of inmates confined to

20 continuous and long-term segregation is unconstitutional. See, e.g., LeMaire v. Maass, 12 F.3d

21 1444, 1457 (9th Cir. 1993) ("[T]his circuit has determined the long-term denial of *outside*

22 exercise is unconstitutional.") (emphasis in original); Touissant v. Yockey, 722 F.2d 1490, 1493

23 (9th Cir. 1984) (holding that the district court did not err in concluding that the denial of outdoor

24 exercise to inmates assigned to administrative segregation for over one year raised "substantial

25 constitutional question"); Allen v. Sakai, 48 F.3d 1082, 1088 (9th Cir. 1994) ("After Spain and

26 Toussaint, defendants cannot legitimately claim that their duty to provide regularly outdoor

27 exercise to [inmate held under "harsh conditions" in the Special Holding Unit] was not clearly

28 established."); Keenan v. Hall, 83 F.3d 1083, 1089-90 (9th Cir. 1996) ("Deprivation of outdoor

1    exercise violates the Eighth Amendment rights of inmates confined to continuous and long-term

2    segregation.") Thus, while the Ninth Circuit has not yet reached the issue of whether outdoor

3    exercise is an Eighth Amendment requirement for all inmates regardless of their housing

4    assignment, it has clearly held that outdoor exercise is a requirement for inmates confined to

5    continuous and long-term segregation.

6         An inmate's right to outdoor exercise is not absolute. Prison officials may restrict outdoor

7    exercise on the basis of weather, unusual circumstances, or disciplinary needs. See Spain v.

8    Procunier, 600 F.2d at 199. Limitations on access to outdoor exercise has been upheld when there

9    was a grave security risk caused by the inmate's own behavior, LeMaire, supra, 12 F.3d at 1458

10   (no constitutional violation stemming from the complete denial of out-of-cell and outdoor

11   exercise for a five-year period that was specific to the inmate (as opposed to a broader policy) and

12   that was based on a grave security risk caused by the inmate's behavior), and institutional security

13   following a genuine emergency, Hayward v. Procunier, 629 F.2d 599, 601 (9th Cir. 1980)

14   (violent and deadly conditions at the prison justified an emergency lockdown that deprived

15   inmates of yard exercise for at least one month).

16   **V.    Conclusion**

17        Plaintiff's complaint fails to state a claim on which relief may be granted. The Court will

18   grant plaintiff an opportunity to file an amended complaint. Noll v. Carlson, 809 F.2d 1446, 1448-

19   49 (9th Cir. 1987). If plaintiff does not wish to amend, he may instead file a notice of voluntary

20   dismissal, and the action then will be terminated by operation of law. Fed. R. Civ. P. 41(a)(1)(A)(i).

21   Alternatively, plaintiff may forego amendment and notify the Court that he wishes to stand on his

22   complaint. See Edwards v. Marin Park, Inc., 356 F.3d 1058, 1064-65 (9th Cir. 2004) (plaintiff may

23   elect to forego amendment). If the last option is chosen, the undersigned will issue findings and

24   recommendations to dismiss the complaint without leave to amend, plaintiff will have an

25   opportunity to object, and the matter will be decided by a District Judge.

26        If plaintiff opts to amend, he must demonstrate that the alleged acts resulted in a deprivation

27   of his constitutional rights. Iqbal, 556 U.S. at 677-78. Plaintiff must set forth "sufficient factual

28   matter . . . to 'state a claim that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at

1  555 (2007)). Plaintiff should note that although he has been granted the opportunity to amend his

2  complaint, it is not for the purposes of adding new and unrelated claims. George v. Smith, 507 F.3d

3  605, 607 (7th Cir. 2007). Plaintiff should carefully review this screening order and focus his efforts

4  on curing the deficiencies set forth above.

5          Finally, plaintiff is advised that Local Rule 220 requires that an amended complaint be

6  complete in itself without reference to any prior pleading. As a general rule, an amended complaint

7  supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once an

8  amended complaint is filed, the original complaint no longer serves a function in the case. Id.

9  Therefore, in an amended complaint, as in an original complaint, each claim and the involvement

10  of each defendant must be sufficiently alleged. The amended complaint should be clearly titled, in

11  bold font, "First Amended Complaint," reference the appropriate case number, and be an original

12  signed under penalty of perjury. Plaintiff's amended complaint should be brief. Fed. R. Civ. P. 8(a).

13  Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief

14  above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations omitted).

15          Accordingly, it is HEREBY ORDERED that:

16          1.      Plaintiff's request for leave to proceed in forma pauperis (ECF No. 2) is granted.

17          2.      Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action.

18  Plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. §

19  1915(b)(1).  All fees shall be collected and paid in accordance with this court's order to the Director

20  of the California Department of Corrections and Rehabilitation filed concurrently herewith.

21          3.      The Clerk's Office shall send Plaintiff a blank civil rights complaint form;

22          4.      Within thirty days from the date of service of this order, plaintiff must file either a

23  first amended complaint curing the deficiencies identified by the Court in this order, a notice of

24  voluntary dismissal, or a notice of election to stand on the complaint; and

25  ////

26  ////

27  ////

28  ////

5.     If plaintiff fails to file a first amended complaint or notice of voluntary dismissal, the Court will recommend the action be dismissed, with prejudice, for failure to obey a court order and failure to state a claim.

Dated:  January 8, 2021

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

/DLB7;
DB/Inbox/Substantive/uhu1613.scrn